IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| VENESHIA FORD, | |
| Plaintiff, | |
| v. | Civil No. **24-354 PJM** |
| NATURALAWN OF AMERICA, INC., | |
| Defendants. | |

## MEMORANDUM OPINION

In this putative class action, Defendant NaturaLawn of America, Inc., has filed a Motion to Dismiss Veneshia Ford's Amended Class Action Complaint. ECF No. 18. Ford has filed a response in opposition, and NaturaLawn has filed a reply. ECF Nos. 19, 20. No hearing is necessary. *See* D. Md. Local R. 105.6. For the following reasons, the Court will **DENY** NaturaLawn's Motion to Dismiss (ECF No. 18).

### I.

Ford is a Maryland resident. ECF No. 14 ¶ 6. NaturaLawn is a Maryland corporation whose principal place of business is in Frederick, Maryland. *Id.* ¶ 7.

Ford alleges that between September 7, 2021 and June 7, 2023, NaturaLawn sent to her personal cell phone several text messages and made numerous calls advertising the company's lawn services. *Id.* ¶ 8-10. She says that these communications persisted even after September 7, 2021, the date she first indicated that she did not want to be contacted by NaturaLawn. *Id.* ¶ 8-9. Each time she would receive a text from NaturaLawn, Ford continues, she would renew her request to "opt-out" of future communications by replying "STOP" to the solicitations. *Id.* ¶¶ 9-13.

1

Ford claims that NauraLawn "does not honor consumer requests to opt-out of text message solicitations," despite its statutory and regulatory obligations to do so under the Telephone Consumer Protection Act (TCPA) of 1991, 47 U.S.C. § 227, and its implementing regulations promulgated by the Federal Communications Commission (FCC), 47 C.F.R. § 64.1200(d). *See* ECF No. 14 ¶¶ 13, 20.

On February 2, 2024, Ford filed a putative Class Action Complaint against NaturaLawn for its alleged violations of the TCPA. *See* ECF No. 1. Ford's original Complaint consisted of two counts: one for a violation of the TCPA's prohibition against a telemarketer's use of prerecorded voice messages, and the other for a violation of the Act's requirement that companies and telemarketers honor a consumer's do-not-contact or opt-out requests. *See id.*

NaturaLawn thereafter filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, in which the company argued that its telemarketer did not use a prerecorded message to call Ford and attached a declaration of the telemarketer in question to substantiate the company's claim. *See* ECF No. 11. NaturaLawn also contended that the remainder of Ford's original Complaint should be dismissed because she lacked a private right of action to sue the company for allegedly contacting her despite her earlier opt-out requests. *See id.*

In response, Ford filed an Amended Class Action Complaint ("Amended Complaint"), which is now her operative Complaint. *See* ECF No. 14. In her Amended Complaint, Ford has removed her allegations related to the supposedly prerecorded call she received, but she retained her allegations with respect to NaturaLawn's purported failure to honor her do-not-contact requests. *See id.* Her case therefore proceeds on a single count, based on NaturaLawn's alleged violations of 47 U.S.C. § 227 and 47 C.F.R. § 64.1200(d) as they relate to a telemarketer's continued communications to a consumer who has requested not to be contacted again. *See id.*

The Amended Complaint defines the putative plaintiff class as:

> All persons within the United States who, within the four years prior to the filing of this Complaint, (1) were sent a text message from Defendant or anyone on Defendant's behalf, (2) regarding Defendant's goods, products or services, (3) to said person's residential cellular telephone number, (4) after making a request to Defendant to not receive future text messages.

*Id.* ¶ 27. Ford's Amended Complaint seeks injunctive relief, and actual and statutory damages. *Id.* at 15. To the extent that it is determined that NaturaLawn has violated the TCPA willfully or knowingly, she also seeks treble damages. *See id.*

On May 14, 2024, NaturaLawn filed the present Motion to Dismiss to address the remaining count in Ford's Amended Complaint. *See* ECF No. 18. NaturaLawn's Motion is ripe for decision. *See* ECF Nos. 19, 20.

## II.

To survive a motion to dismiss, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the facts alleged allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint is properly dismissed where, even if true, the allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The court must examine the complaint as a whole, accepting all well-pled facts as true, and must construe the factual allegations in the light most favorable to the plaintiff. *See Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### III.

NaturaLawn's Motion presents a single argument: Ford's case cannot proceed because no private right of action exists under the TCPA to enforce 47 C.F.R. § 64.1200(d)'s requirements. *See* ECF No. 18 at 3-4. NaturaLawn posits that although Section 64.1200(d)'s provisions cannot be privately enforced, consumers frustrated by a deluge of text messages after making opt-out requests may have their grievances redressed if and when the attorney general of the consumer's State brings a civil suit against the offending entity, or the FCC otherwise steps in to stem the tide of solicitations. *See* ECF No. 20 at 6. The Court disagrees.

### A.

In 1991, Congress passed the TCPA in reaction to "growing public criticism of abusive telephone marketing practices." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019). In enacting the TCPA, Congress "sought to strike a balance between individuals' privacy rights, public safety interests, and commercial freedoms." *Id.* (citation and internal quotation marks omitted). "To meet these ends, the TCPA first imposed a number of restrictions on the use of automated telephone equipment, such as 'robocalls.'" *Id.* (citing 47 U.S.C. § 227(b)).

In subsection (c) of the TCPA, Congress charged the FCC with promulgating regulations "concerning the need to protect individual telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1); *see also Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 628-29 (6th Cir. 2009). Specifically, the statute required the FCC to, among other things, "compare and evaluate alternative methods and procedures (including the use of electronic databases . . . industry-based or company-specific 'do not call' systems, and any other alternatives, individually or in combination) for their effectiveness in protecting such privacy rights, and in terms of their cost and other advantages and disadvantages." *Id.* § 227(c)(1)(A).

Subsection (c) also provided the FCC authority to "require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase." *Id.* § 227(c)(3). The FCC did so when it created the national "Do-Not-Call" registry. *See* 47 C.F.R. § 64.1200(c)(2); *Krakauer*, 925 F.3d at 649.

But that is not all the FCC did in response. The agency additionally promulgated regulations requiring companies "to keep individual Do-Not-Call lists, reflecting persons who have directly told the company that they do not wish to receive further solicitations." *Krakauer*, 925 F.3d at 649 (citing 47 C.F.R. § 64.1200(d)).

Beyond these directives to the FCC, subsection (c) of the TCPA provides a private right of action. The pertinent language reads as follows:

> Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
>
> (A)    an action based on a violation of the regulations prescribed under this subsection to enjoin such violation;
>
> (B)    an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater; or
>
> (C)    both such actions.

47 U.S.C. § 227(c)(5). If a court determines that a defendant has violated the TCPA "willfully and knowingly," the court is authorized to treble the damages awarded to the successful plaintiff. *Id.*; *see Krakauer*, 925 F.3d at 649.

Subsection (d) of the TCPA sets forth "technical and procedural standards" with which telemarketers must comply to avoid liability under the Act. *Id.* § 227(d). Specifically, subsection (d) makes it unlawful "to initiate any communication using a telephone facsimile machine, or to make any telephone call using any automatic telephone dialing system, that does not comply with

5

the technical and procedural standards under this subsection," and to "use a computer or other electronic device to send any message via a telephone facsimile machine unless such person clearly marks . . . the date and time it is sent and an identification of the business . . . sending the message[.]" *Id.* § 227(d)(1)(A)-(B).

Unlike subsection (c), subsection (d) does not provide a private cause of action for telephone consumers but is instead enforceable by State attorneys general and the FCC. *See id.* §§ 227(g)(1), 227(g)(7).

Shortly after the enactment of the TCPA, the FCC promulgated regulations to implement the statute. Those relevant to this dispute provide:

> No person or entity shall initiate . . . any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1)   Written policy. Persons or entities making . . . calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2)   Training of personnel. Personnel . . . who are engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3)   Recording, disclosure of do-not-call requests. If a person or entity making . . . any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. . . .
>
> (4)   Identification of callers and telemarketers. A person or entity making . . . any call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. . . .

47 C.F.R. § 64.1200(d).

Another regulatory provision clarifies that the kinds of calls prohibited in Section 64.1200(d), if made to a residential telephone number, are equally prohibited if made to a wireless telephone number. *Id.* § 64.1200(e). For more than a decade, courts and the FCC have understood the TCPA and its implementing regulations to limit marketing text messages sent to residential cell phone numbers as much as calls made to residential telephone numbers. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call'"); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 8016-17 (2015).

## B.

As indicated, NaturaLawn contends that individuals like Ford have no private right of action to enforce the regulatory provisions of Section 64.1200(d) because, in short, those provisions set forth only "technical and procedural" requirements. ECF No. 18 at 4. This, according to NaturaLawn, means that Section 64.1200(d) was promulgated to implement the statutory requirements of subsection (d) of the TCPA (which does not include a private right of action), not subsection (c) (which does). *See id.* at 3-4. In making this argument, NaturaLawn urges the Court to follow earlier decisions of two other Judges in this District who have held that Section 64.1200(d) is not enforceable by private parties. *See* ECF No. 18 at 3; ECF No. 20 at 3-4 (citing *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 U.S. Dist. LEXIS 118774 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017); *Worsham v. Direct Energy Srvs., LLC*, No. SAG-20-193, 2021 U.S. Dist. LEXIS 46837 (D. Md. Mar. 12, 2021), *aff'd*, No. 21-1677, 2022 U.S. App. LEXIS 11589 (4th Cir. Apr. 28, 2022)).

In *Worsham v. Travel Options*, the earliest case in this District relied upon by NaturaLawn,
a *pro se* plaintiff sued the defendant travel companies for alleged violations of the TCPA and its
Maryland analog, the Maryland Telephone Consumer Protection Act. 2016 U.S. Dist. LEXIS
118774, at *1. The plaintiff alleged that he received four unwanted marketing calls over a three-
day period. *Id.* at *4. He brought twenty-four counts against the defendants, the majority of which
focused on alleged failures of the defendants to "identify the caller," "transmit caller identification
and the calling number," and "pay an annual fee for access to telephone numbers" on the Do-Not-
Call registry. *Id.* at *6-7. Only one claim related to "the TCPA's and FCC's prohibition on
initiating calls to a telephone number on the [national Do-Not-Call] list." *Id.* at *6. None of the
plaintiff's claims related to a business's failure to maintain or observe a company-specific do-not-
call list, as is alleged here.

At the time, the court explained the interrelation between the TCPA and the FCC's
regulations as follows:

> The FCC has addressed the specific concerns expressed in subsection *b* within
> § 64.1200(a), and it has addressed those expressed in subsection *c* within
> § 64.1200(c). What the FCC has prescribed in § 64.1200(b) implements subsection
> *d* of the TCPA, which mandates regulations for technical and procedural standards
> for telephone calls initiated by an automatic telephone dialing system or calls using
> an artificial or prerecorded voice system; likewise, the requirements of
> § 64.1200(d) set forth the procedural standards for telemarketers to maintain their
> own, company-specific, do-not-call lists and, consequently, appear to fall under the
> aegis of subsection *d* of the TCPA.

*Id.* at *9-10 (emphases in original). Later in its decision, the District Judge found that many of the
plaintiff's claims—especially those alleging a failure to identify the caller/seller—were brought
pursuant to Section 64.1200(d)(4). *Id.* at *18-19. Based on this, the court concluded that the
plaintiff lacked a private right of action to enforce Section 64.1200(d)(4) because, as the court
reasoned, that provision sets forth merely technical and procedural requirements that were

8

promulgated to implement subsection (d) of the TCPA, not either of the cause-of-action granting subsections of the Act, subsections (b) and (c). *See id.* (citing *Burdge v. Ass'n Health Care Mgmt., Inc.*, No. 1:10-cv-100, 2011 U.S. Dist. LEXIS 9879 (S.D. Ohio, Feb. 2, 2011)).

In *Worsham v. Direct Energy Services, LLC*, the same plaintiff, "a disbarred attorney who appear[ed] *pro se*," sued a different defendant, this time an energy company, for alleged violations of the TCPA when the defendant company (or an entity purportedly calling on its behalf) rang his home and cell phones more than twenty-five times over a period of five months. 2021 U.S. Dist. LEXIS 46837, at *1, *2-4. The plaintiff brought more than twenty counts against the defendant, alleging various violations of Section 64.1200(d) and, specifically, Section 64.1200(d)(4). *See id.* at *8-9.

A second Judge in this District granted summary judgment to the defendant, in part on the ground that the plaintiff failed to produce any admissible evidence tying the defendant to the allegedly offending calls. *See id.* at *7-8. In addition to this "factual deficiency," *id.* at *7, the court concluded that the plaintiff lacked a private right of action for his claims based on Section 64.1200(d) and subsection (d)(4). *Id.* at *9. Adopting the earlier reasoning of the District Judge in *Travel Options* "in its entirety," the second court reiterated its understanding that subsection (d)(4) "sets procedural standards and therefore falls within the scope of subsection *d* of the TCPA, which does not include a private right of action." *Id.* (emphasis in original).

But *Travel Options* and *Direct Energy* are not the only, or even the last, words on the subject from a member the court.[1] In *Worsham v. Discount Power, Inc.*, No. RDB-20-008, 2021

---

[1] To be clear, the claims presented by the plaintiff in *Travel Options* and *Direct Energy* are distinguishable from the sole remaining count in Ford's Amended Complaint. Whereas the plaintiff in those cases alleged a plethora of unquestionably procedural errors committed by the defendants, such as the failure of a telemarketer to identify him- or herself and the company on whose behalf he or she was calling, *Travel Options*, 2016 U.S. Dist. LEXIS 118774, at *6-8; *Direct*

U.S. Dist. LEXIS 230937 (D. Md. Dec. 1, 2021), the same plaintiff from the *Direct Energy* case sued a different energy company, bringing essentially the same claims against the defendant as he had asserted against the defendant in *Direct Energy*. At an earlier stage of the litigation, the *Discount Power* court dismissed the plaintiff's claims premised on alleged violations of Section 64.1200(d) because, the court determined, no private right of action existed for such violations. *See id.* at *4, *8. However, based upon the plaintiff's motion for reconsideration, the District Judge reversed himself, citing an intervening decision from the Maryland Court of Special Appeals. *See id.* at *9.[2]

As the *Discount Power* court explained, while the TCPA is a federal statute, the right of action conferred by 47 U.S.C. § 227(c) does so "where permitted by 'the rules or laws of court of a State.'" *Id.* at *9 (quoting 47 U.S.C. § 227(c)(5)). Given this statutory nod to state law, the court held that "decisions of the Maryland appellate courts interpreting" the TCPA "'should be attributed some weight.'" *Id.* (quoting *Koch v. Specialized Care Servs., Inc.*, 437 F. Supp. 2d 362, 374 (D. Md. 2005)). With principles of comity in mind, therefore, the *Discount Power* court considered the Court of Special Appeals' decision in yet another Worsham case, *Worsham v. Lifestation, Inc.*, No. 661, Sept. Term, 2020, 2021 Md. App. LEXIS 1014 (Md. Ct. Spec. App. Nov. 17, 2021), wherein the Court of Special Appeals found that Section 64.1200(d) *was* enforceable by private parties by way of the private right of action conferred by subsection (c) of the TCPA. *See* 2021 U.S. Dist. LEXIS 230937 at *9-10. As noted by the District Judge, central to the Court of Special

---

*Energy*, 2021 U.S. Dist. LEXIS 46837, at *8-9, Ford claims only that NaturaLawn continued to contact her despite her repeated requests that the company stop doing so.

[2] Since the *Discount Power* opinion was issued, the name for the Maryland Court of Special Appeals has changed to the Appellate Court of Maryland. *See* Press Release, Maryland Courts, Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland (Dec. 14, 2022), https://www.courts.state.md.us/media/news/2022/pr20221214. This Opinion refers to the court using the name in effect at the time that the decision at hand was issued.

Appeals' reasoning was the fact that the regulatory provisions of Section 64.1200 were "promulgated prior to the national Do Not Call list" which, when established, created "an alternative scheme that required companies to create and maintain their own do-not-call lists for the same purpose" as mandated by subsection (c) of the TCPA, i.e., "protecting the privacy rights of individual telephone subscribers to avoid receiving unwanted telephone solicitations." *Id.* Further evidence suggested that subsection (c) was meant to be enforced by Section 64.1200(d)— namely, that regulatory provision "is expressly addressed to '*all* telemarketing calls,'" whereas subsection (d) of the TCPA "governs procedures" only for artificial or prerecorded messages. *Id.* (quoting *Lifestation*, 2021 Md. App. LEXIS 1014, at *15) (emphasis added).

As the *Discount Power* court observed, this understanding of the regulation aligns with the decisions of "several federal courts which have concluded" that Section 64.1200(d) "imposes 'minimum procedures for maintaining a do-not-call list,' and that Congress clearly intended to authorize a consumer 'to recover for the telemarketer's failure to institute [those] minimum procedures.'" *Id.* (quoting *Charvat*, 656 F.3d at 449; *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019).[3] "Collectively," these cases suggest "that the regulation at issue is best construed as a privacy protection that was originally promulgated pursuant to [47 U.S.C.] § 227(c)." *Id.* at *11-12.

---

[3] *See also id.* at *11 (collecting cases); *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 324-35 (D. Mass. 2022) (collecting cases); *Anthony v. Pro Custom Solar, LLC*, No. ED CV20-1968 JAK (KKX), 2022 U.S. Dist LEXIS 96935, at *14 (C.D. Cal. Jan. 21, 2022) (similar).

This Court concurs with the reasoning of *Discount Power* and the cases that have found a private right to enforce Section 64.1200(d) under subsection (c) of the TCPA.[4] At bottom, the TCPA permits a telephone consumer to sue a telemarketer if it can be shown that the consumer received more than one solicitation (whether by call or by text) within the preceding 12-month period in violation of the FCC's regulations governing such communications.   47 U.S.C. § 227(c)(5).  As numerous courts have concluded, the regulatory requirement that telemarketers desist from contacting those consumers who have told the telemarketer to "STOP" contacting them, ECF No. 14 ¶ 8, is rooted in the TCPA's directive to the FCC to promulgate rules, including requiring company-specific do-not-call systems, "to protect residential telephone subscribers' privacy rights." 47 U.S.C. § 227(c)(1); *see, e.g., supra* at 11 & n.3.[5]

Ford alleges that NaturaLawn has not heeded the FCC's statutory command by continuing to pester her with advertising efforts long after she told the company to stop contacting her. ECF

---

[4] More recently, another Judge in this District held that a plaintiff who alleges she received text messages from a telemarketer after expressing her wish to opt-out of future messages states a claim for relief as a violation of the TCPA under 47 C.F.R. § 64.1200(d)(3). *See Cleveland v. Nextmarvel, Inc.*, No. TDC-23-1918, 2024 U.S. Dist. LEXIS 9679, at *8 (D. Md. Jan. 18, 2024). Indeed, in *Cleveland*, the court went so far as to find that treble damages would be available where the defendant was alleged to have "deliberately programmed its telemarketing phone systems to continue sending messages to persons who had sent 'Stop' requests," and continued to bombard the plaintiff with solicitations despite "confirming that she had been 'unsubscribed.'" *Id.* at *9-10.

[5] NaturaLawn asks the Court to find that Ford lacks a private right of action by reading tea leaves in the Fourth Circuit's unpublished, *per curiam* affirmance in *Direct Energy. See* ECF No. 20 at 3.  According to NaturaLawn, the Fourth Circuit was presented with, and rejected, the precise argument advanced here that subsection (c) of the TCPA is implemented by 47 C.F.R. § 64.1200(d), and attaches the appellant's informal brief before the appellate court to substantiate its point. *See* ECF No. 20 at 3; ECF No. 20-1. The Court declines to embark on such a venture. Although unpublished appellate decisions are permissible sources of persuasive, not precedential, authority, *see, e.g.,* Fed. R. App. P. 32.1, the *per curiam* decision NaturaLawn asks this Court to follow is a summary affirmance without any substantive reasoning or analysis. *See Direct Energy*, 2022 U.S. App. LEXIS 11589. For the reasons already explained, the Court finds the astute opinion in *Discount Power* and the cases upon which it relies to be persuasive and follows them accordingly.

No. 14 ¶¶ 8-10. Assuming her Amended Complaint alleges facts sufficient to state a claim under the Act and its implementing regulations, a question the Court next considers, Ford may seek redress by suing NaturaLawn pursuant to 47 U.S.C. § 227(c)(5).

## C.

To state a claim for a defendant's purported violation of the TCPA by failing to honor a plaintiff's earlier opt-out request, a plaintiff must allege that: (1) more than one telephone call was made to her within any 12-month period; (2) the calls were made for the purpose of encouraging the purchase or rental or, or investment in, property, goods, or services; (3) the calls were made by or on behalf of the same entity; (4) the telemarketing entity failed to honor the recipient's prior do-not-call request; (5) and the calls occurred within a reasonable time after the date her do-not-call request was made. *See Cleveland*, 2024 U.S. Dist. LEXIS 9679, at *8 (citing 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d)(3)).

In her Amended Complaint, Ford alleges that, after she informed the company on September 7, 2021 that she did not want to hear from it anymore, NaturaLawn sent her at least five text messages advertising its services. ECF No. 14 ¶¶ 8-9. Each of these messages occurred "more than 30 days" after her initial do-not-contact request. *Cleveland*, 2024 U.S. Dist. LEXIS 9679, at *8; *see* ECF No. 14 ¶¶ 8-9. Ford also alleges that, in the interim between these messages, NaturaLawn called her phone on December 8, 2022. *Id.* ¶ 10. These facts, accepted as true at this stage, *Lambeth*, 407 F.3d at 268, suffice to plausibly allege that NaturaLawn has violated the TCPA and Section 64.1200(d).

As indicated, Ford seeks treble damages for each of NaturaLawn's alleged violations of the TCPA. *See, e.g.*, ECF No. 14 ¶ 53. For such a claim, "the only additional element" that must be alleged is that NaturaLawn "acted willfully or knowingly." *Cleveland*, 2024 U.S. Dist. LEXIS

13

9679, at *8. "For purposes of civil liability, a defendant acts willfully when it 'demonstrate[s] indifference to ongoing violations and a conscious disregard for compliance with the law.'" *Id.* at *9 (quoting *Krakauer*, 924 F.3d at 662).

Ford's Amended Complaint avers that, despite receiving her opt-out requests, NaturaLawn "continued to text message" and "harass [her] . . . into making purchases." ECF No. 14 ¶ 44. She provides screenshots of five text communications wherein she tells the company to "STOP" contacting her, after which NaturaLawn apparently sent her confirmation messages stating that her opt-out requests "block[ed] all texts sent from this number." ECF No. 14 ¶ 8. Those repeated messages, paired with NaturaLawn's supposed acknowledgment of Ford's opt-out requests, lends plausibility to the conclusion that the company acted with conscious disregard for compliance with the law. Accordingly, Ford has stated a claim for treble damages under the TCPA.

### Conclusion

For the foregoing reasons, the Court **ORDERS** that NaturaLawn's Motion to Dismiss (ECF No. 18) is **DENIED**.

A separate Order will **ISSUE**.

June 25, 2024

_____
**PETER J. MESSITTE**
**U.S. District Judge**